

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2015 OCT -8 P 3: 21

JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 14-CR-237

HAIJUN TIAN,

    Defendant.

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Gregory J. Haanstad, Acting United States Attorney for the Eastern District of Wisconsin, and Michael Chmelar, Assistant United States Attorney, and the defendant, Haijun Tian, individually and by attorney Michael Hart, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.    The defendant has been charged in a three-count indictment, which alleges violations of Title 21, United States Code, Sections 952 (Counts One and Two) and 959 (Count Three).

3.    The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.    The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

**THE GRAND JURY CHARGES:**

On or about March 11, 2014, in the State and Eastern District of Wisconsin, and elsewhere,

### HAIJUN TIAN

knowingly imported a mixture and substance containing AB-FUBINACA, a Schedule I controlled substance, from the People's Republic of China into the United States.

In violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt, and constitutes relevant conduct under Sentencing Guidelines Manual § 1B1.3:

Beginning no later than 2011 and continuing until March 2015, Haijun Tian was responsible for manufacturing synthetic cannabinoids at a manufacturing facility located inside the People's Republic of China. Also during that period, Tian sold kilogram quantities of synthetic cannabinoids to wholesale distributors of synthetic cannabinoids located in China and to individuals located in the United States. One of the synthetic cannabinoids manufactured and sold by Tian was AB-Fubinaca. AB-Fubinaca, also known as "ABF" is a schedule I controlled substance. ABF was scheduled by the Drug Enforcement Administration on February 10, 2014.

On or about December 10, 2013, Tian began communicating with an individual, who unbeknownst to Tian was working as a confidential informant for the U.S. Drug Enforcement

Administration ("CS-1"). Tian and CS-1 communicated primarily using email. Tian used email account goodluckly58@gmail.com.

On or about February 13, 2014, CS-1 sent an email Tian describing the legal status of ABF in the United States. Specifically, CS-1 wrote, "The US government made ABF illegal a few days ago, but I still have a couple of people who want to buy some if the price is good. Do you have any ABF left over? How much would you sell it for?" Later that day, Tian responded to CS-1's email. In response, Tian wrote, "Yes, i have abf now . . . ABF is [$]900 now," which meant that Tian would sell a kilogram of ABF to CS-1 for $900.

On or about March 3, 2014, CS-1 sent an email to Tian in which CS-1 ordered 8 kilograms of ABF. Specifically, CS-1 wrote, "Hi Tian, Please send me the bank account you want me to send the money for products. I am going to send $8000. Can you send me 8kg of ABF . . . ?" In response, on or about March 9, 2014, Tian wrote, "I can send abf . . . [c]an I send 8kg afb tomorrow . . . ."

On March 10, 2014, CS-1 sent an email to Tian that listed two addresses in the United States where the 8 kilograms of ABF should be sent. CS-1 asked Tian to send 4 kilograms of ABF to each address. One of the addresses was located in Tampa, Florida and the other was located in Oak Creek, Wisconsin.

On or about March 10, 2014, law enforcement wired $8,000 to a bank account controlled by Tian at the Bank of China. The next day, Tian told CS-1 the tracking numbers for the shipments of ABF were EE605536843CN and EE605536874CN.

On or about March 17, 2014, the 4-kilogram shipment of ABF sent by Tian was received at the address in Oak Creek, Wisconsin. A few days later, on or about March 20, 2014, the 4-kilogram shipment of ABF sent by Tian was received at the address in Tampa, Florida. The

3

contents of each shipment were analyzed by the DEA. The DEA determined that each package from Tian contained approximately 4 kilograms of AB-Fubinaca.

On or about July 7, 2014, CS-1 sent an email to Tian requesting an additional quantity of ABF and another synthetic cannabinoid. Specifically, CS-1 wrote, "My customer wants to make a big batch of samples with better ABF and AM2201. Can you send me 1 kg of each?" In response, Tian wrote, "Ok. Which address . . . 900 you will send," which meant that Tian would sell the kilograms of ABF and AM2201 to CS-1 for $900 per kilogram.

Later that same day, CS-1 wrote another email to Tian requesting 2 kilograms of ABF instead of 1 kilogram. In the email, CS-1 wrote, "You can send it to the Wisconsin address. Please send 2kg ABF and 1kg of new AM2201. I'll send $2,700," which meant that CS-1 would pay Tian $900 per kilogram of ABF and the other synthetic cannabinoid.

On or about July 2, 2014, Tian responded to CS-1. In response, Tian wrote, "Ok, I will send ABF tomorrow, and later new 2201 please wait 3days, I will make it, soon. Please send don't worry. Thanks." CS-1 replied, "No problem, which account do you want me to send the $2700 to?" Tian stated that the money should be sent to an account he controlled at the Bank of China. A short time later, CS-1 wired the money to Tian's account at the Bank of China. Tian verified receipt of the payment and sent tracking numbers EA074603309CN and EA074604865CN to CS-1 so CS-1 could track the shipments from China to the United States.

On or about July 12, 2014, the 2-kilogram shipment ABF was received at an address in Oak Creek, Wisconsin. The contents of the package containing the ABF were analyzed by the DEA. The DEA analysis confirmed that the package Tian sent from China contained approximately 2 kilograms of ABF.

On or about September 17, 2014, CS-1 sent an email to Tian requesting 2 kilograms of ABF and 2 kilograms of another of synthetic cannabinoid. Specifically, CS-1 wrote, "I need to

4

test some new products with some chemical. Do you have any ABF and ADBF? I need to get 2 of each. Thanks." In response, Tian sent a series of emails in which he verified he had both ABF and ADBF. Tian stated that the ABF would cost $900 per kilogram and ADBF would cost $1,400 per kilogram.

On or about September 23, 2014, CS-1 sent an email to Tian verifying that he/she wired $4,600 to a bank account Tian controlled at the Bank of China. Specifically, CS-1 wrote, "I sent $4600 today. You will get it tomorrow for sure . . . Please send the 4kg to the same address in Wisconsin. Thanks!" In response, Tian sent an email to CS-1 that contained tracking numbers EE934429221CN and EE934429218CN.

On or about October 4, 2014, the 2-kilogram shipment of ABF was received at an address in Oak Creek, Wisconsin. The contents of the package containing the ABF were analyzed by the DEA. The DEA analysis confirmed that the package Tian sent from China contained approximately 2 kilograms of ABF.

The shipping records associated with all of the shipments indicated that the shipments originated in the People's Republic of China. The shipping records falsely identified the contents of the shipments as "zinc dimethyacrylate," "glass enamel white color," or "Calcium Stearate" rather than ABF.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count One, 20 years and $1,000,000. Count One also carries a mandatory special assessment of $100, at least 3 years of supervised release, and a maximum life term of supervised release.

## DISMISSAL OF REMAINING COUNTS

7. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge of unlawfully importing a controlled substance into the United States, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

   (1) The defendant brought AB-Fubinaca from a point outside the United States into the United States;

   (2) The defendant did so knowingly; and

   (3) The defendant knew the substance was some kind of controlled substance.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

15. The parties agree to recommend acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant is

7

approximately 8,000 grams of a mixture and substance containing AB-Fubinaca, a Schedule I controlled substance.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One, and relevant conduct is 30 under Sentencing Guidelines Manual §§ 2D1.1(a)(5) and (c)(5).

### Specific Offense Characteristics

17. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance under Sentencing Guidelines Manual § 2D1.1(b)(12) is applicable to the offense level for the offense charged in Count One. The parties acknowledge and understand that the defendant will not join in this recommendation.

18. The parties acknowledge and understand that the government will recommend to the sentencing court that a 2-level increase to the base offense level is applicable under Sentencing Guidelines Manual § 2D1.1(b)(15)(C) because defendant receives an adjustment under Sentencing Guidelines Manual § 3B1.1 and the defendant was directly involved in the importation of a controlled substance. The parties acknowledge and understand that the defendant will not join in this recommendation.

### Role in the Offense

19. Pursuant to Sentencing Guidelines Manual § 3B1.1, the parties acknowledge and understand that the government will recommend to the sentencing court that a 4-level increase be given for an aggravating role in the offense, as the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. The parties acknowledge and understand that the defendant will not join in this recommendation.

### Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

23. The defendant is free to recommend whatever sentence he deems appropriate. The government agrees not to recommend an above guideline range sentence.

### Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The

sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

# DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offense[s] to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

34. The defendant knowingly and voluntarily agrees to be deported and removed from the United States following the completion of any term of imprisonment in this matter.

12

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EEFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed

13

against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

40. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9-28-15

Hai Jun Tian
HAIJUN TIAN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: Oct. 7, 2015

MICHAEL HART
Attorney for Defendant

For the United States of America:

Date: 10/8/15

GREGORY J. HAANSTAD
Acting United States Attorney

Date: 10/8/15

MICHAEL CHMELAR
Assistant United States Attorney

15